**HARPER v. CRENSHAW et al.***
No. 6430.

United States Court of Appeals for the District of Columbia.

Argued Oct. 16, 1935.

Decided Jan. 20, 1936.

Motion to Modify Opinion Denied April 17, 1936.

GRONER and STEPHENS, Associate Justices, dissenting.

———◇———

William C. Sullivan, of Washington, D. C., for appellant.

George C. Gertman, Roger J. Whiteford, Arthur P. Drury, Hugh H. O'Bear, James O'D. Moran, A. Coulter Wells, W. N. Tobriner, Leon Tobriner, Selig C. Brez, Benjamin S. Minor, and H. Prescott Gatley, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This appeal is taken from an order and decree of the lower court sustaining a motion to dismiss the bill of complaint filed in that court by the appellant as plaintiff against the various appellees as defendants.

In the bill the plaintiff, Harper, alleges in substance that in the year 1928 plaintiff and the various defendants named in the bill were directors and stockholders of the District National Bank in Washington, D. C., and that they were desirous of maintaining a reasonable market price for the capital stock of the bank by avoiding the consequences of the sale of blocks of such stock upon the Washington Stock Exchange with little or no regard to price, to the disadvantage and loss to the bank as well as its stockholders and depositors and the general banking interests of the community; that thereupon for the purpose aforesaid they entered into a "joint adventure" between themselves, not in writing, for the purchase and sale of capital stock of the bank; that it was agreed between them that the defendant Rogers should be the trustee for the adventure, in whose name all bank accounts should be carried; that the defendant Gockeler should buy and sell the bank stock in such blocks, at such times and prices and upon such terms as he should deem advisable; that each of the parties to the adventure should, and each of them did, pay into its treasury the sum of $250 to provide the margins necessary to be raised in the purchase of stock; that the defendant Gockeler should raise any additional funds necessary for such purchases, using such stock as collateral security therefor, and giving for the purpose a note or notes with such maker or makers, and such indorser or indorsers, if any, as should be necessary; that Gockeler in making such purchases and sales was to exercise his own discretion with or without conference with other parties to the adventure, as he might deem appropriate at the time, the parties thereto to share equally in any profits which might be realized from such purchases and sales, and to bear equally any losses which might thereby be sustained.

That shares of the capital stock of the bank were then purchased and sales thereof made from time to time, such purchases and sales all being made on the Washington Stock Exchange, and the purchases and sales so made were from time to time reported by Gockeler to the parties in the adventure, and were fully discussed and approved by them; that it became necessary from time to time to raise funds in addition to the original contributions so as to provide the excess purchase price of such stock; that on November 12, 1928, Gockeler borrowed the sum of $17,600 for this purpose from the Commercial National Bank of Washington, D. C., and this loan was fully discussed and approved by the parties to the adventure; that a promissory note was given to the bank signed by Gockeler and the plaintiff, Harper, and that payment of the note was secured by

*Writ of certiorari denied 56 S. Ct. 957, 80 L. Ed. ——.

collateral of 90 shares of capital stock of the District National Bank and also additional securities owned by the plaintiff individually; that no part of the principal of said note has ever been paid, and the same is now due and payable; that the Commercial National Bank on February 23, 1933 was placed in the hands of a receiver by the Comptroller of the Currency, and on March 5, 1933, the District National Bank was closed and afterwards placed in the hands of a receiver; that no part of the 90 shares of stock of the District National Bank owned by plaintiff, Harper, and held by the Commercial National Bank as security for the loan has been sold, but the same is still held by the receiver of the Commercial National Bank as collateral security for the loan, as also are the additional securities owned by the plaintiff and used as collateral to the said note; that the receiver of the Commercial National Bank has made demand upon the plaintiff to pay the note for $17,600, and has threatened upon failure so to do to sell plaintiff's securities and apply the proceeds of the same to the liquidation of the note; that the defendants have refused to pay any part thereof, although called upon by the plaintiff so to do. Wherefore the plaintiff, being without any remedy at law, prays for an accounting of the business and affairs of the joint adventure, also the appointment of a receiver, if necessary, and that the parties to the joint adventure be required to join with the plaintiff in the payment of the note for $17,600 and for general relief.

The various defendants in the lower court filed separate motions to dismiss the bill, alleging defects of both form and substance therein. The court sustained the motions upon the ground that the agreement of the parties in the joint adventure set out in the bill was contrary to public policy and void. The court thereupon dismissed the bill, and the present appeal followed.

In our opinion the decision of the lower court was correct. The joint adventure which forms the basis of appellant's claim had as its object the fixing of a fictitious price on the Washington Stock Exchange for the shares of stock in the District National Bank, and to prevent the free and uncontrolled processes of the stock exchange whereby the stock might be quoted at a price reflecting the real judgment of the buyers and sellers thereof as to its true market value. Thereby the public would be misled when dealing with the stock. The arrangement was designed to profit the parties to it at the expense of the public. A contract having such a purpose is against public policy and cannot be enforced in equity.

In the case of Scott v. Brown et al., 2 Q.B.(1892) 724, it was held that an agreement between two or more to purchase shares in a company in order to induce persons who might thereafter purchase shares in such company to believe, contrary to the facts, that there was a bona fide market for its shares, and that the shares were at a real premium, is an illegal transaction, and no action can be maintained in respect to such agreement or purchase of shares.

In Livermore v. Bushnell 5 Hun (N. Y.) 285, it is said that the law will not aid either party to enforce an agreement entered into for the purpose of advancing the selling price of stocks by means of fictitious dealings designed to produce a false impression on the minds of observers concerning their real value, and in that way to induce them to invest their money in such stocks. Such an agreement is void and against public policy. (Citing authorities.)

The decree of the lower court is affirmed, with costs.

Affirmed.

GRONER, Associate Justice (dissenting).

I think the decree should be reversed and the case remanded for trial on the merits.

I am in agreement with the opinion of this court that, if the contract sued on is against public policy, the court may not grant relief, even though the parties are in pari delicto. And I also think that if, on a trial, it should appear that the purpose of the agreement was to create a fictitious market in order to induce the public to purchase shares in the bank at a price higher than their real value, the agreement would be void as against public policy. But I do not think the bill states such a case.

It charges that certain directors and stockholders of the bank "were desirous of maintaining a reasonable market price for the capital stock of the District National Bank of Washington, D. C. by

avoiding the inevitable consequences of ·a large block or blocks of the said stock being sold upon the Washington Stock Exchange with little or no regard for price, to the disadvantage of and loss to the said bank and as well as its stockholders, depositors and borrowers and the general banking and other interests of the community." To carry out this plan, the parties appointed one of their number to "buy and sell the said stock in such blocks, at such times, at such prices, and upon such terms and conditions as he should deem advisable."

It is not apparent from the bill that the purpose was to depress the price of the stock so as to prevent competitive bidding, and it does not appear that it was to advance the price and thus create a fictitious market, either by false rumors or in any other illegal way. If the purpose of the agreement was not to suppress competition, nor to improperly advance the price of the stock, nor to create a false market, but was confined to supporting the market against unusual conditions; i. e., the dumping of large blocks of stock at one time which the market could not normally sustain, and if the purpose was wholly for the protection of the rights of the stockholders and depositors, and this consistently with the rights of the public, as is alleged, the contract was not, in my opinion, illegal; and I can find no case which so holds.

Justice STEPHENS joins in this opinion.